21 CV 9460 (JPC)(OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL OSGOOD,

Plaintiff,

-against-

CITY OF NEW YORK, BILL DEBLASIO,
Individually, JAMES O'NEILL, Individually,
TERENCE MONAHAN, Individually, DERMOT
SHEA, Individually, ANN PRUNTY, Individually,
JOHN DONAHUE, Individually, JAMES ESSIG,
Individually, and RAYMOND SPINELLA,
Individually,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Dominique F. Saint-Fort*
*Tel:  (212) 356-2444*
*Matter No. 2021-039786*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ......................................................................................................... 8

        A.  Standard on a Motion to Dismiss .......................................................... 8

     POINT I ...................................................................................................... 9

        PLAINTIFF'S CLAIMS ARE PARTIALLY TIME-
        BARRED ................................................................................................ 9

     POINT II ..................................................................................................... 10

        PLAINTIFF'S SECTION 1983 CLAIMS SHOULD
        BE DISMISSED AGAINST DEFENDANTS
        DEBLASIO, COMMISSIONER O'NEILL, AND
        CHIEFS ESSIG, SPINELLA, MONAHAN, AND
        DONOHUE, FOR LACK OF PERSONAL
        INVOLVEMENT ..................................................................................... 10

     POINT III .................................................................................................... 13

        PLAINTIFF'S FIRST AMENDMENT
        RETALIATION CLAIMS FAILS ........................................................... 13

        A.  Plaintiff Fails to State a Claim of First
            Amendment Retaliation ................................................................... 13

        B.  Plaintiff Fails To Plausibly Plead A § 1983
            Claim For Municipal Liability Under The Free
            Speech Clause of The First Amendment ........................................... 22

     POINT IV .................................................................................................... 24

        THE INDIVIDUAL DEFENDANTS ARE
        QUALIFIEDLY IMMUNE FROM SUIT .............................................. 24

CONCLUSION ..................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abrams v. Dep't of Pub. Safety*,
    764 F.3d 244 (2d Cir. 2014)..........................................................................18, 19

*Andersen v. Rochester City Sch. Dist.*,
    481 F. App'x 628 (2d Cir. 2012) ...........................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................8

*Bermudez v. City of New York*,
    783 F. Supp. 2d 560 (S.D.N.Y. Mar. 25, 2011).....................................................22

*Birch v. City of N.Y.*,
    675 F. App'x 43 (2d Cir. 2017)...............................................................................10

*Black v. Coughlin*,
    76 F.3d 72 (2d Cir. 1996).......................................................................................11

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)....................................................................................12

*Bright v. Coca Cola Refreshments USA, Inc.*,
    2014 U.S. Dist. LEXIS 155565 (E.D.N.Y. Nov. 3, 2014).....................................10

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)................................................................................................22

*Clark County Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)................................................................................................19

*Colon v. City of N.Y.*,
    2021 U.S. Dist. LEXIS 8931 (S.D.N.Y. Jan. 15, 2021).........................................12

*Condit v. Bedford Cent. Sch. Dist.*,
    2017 U.S. Dist. LEXIS 171701 (S.D.N.Y. Oct. 16, 2017) ......................................9

*Constant v. Annucci*,
    2018 U.S. Dist. LEXIS 58318 (S.D.N.Y. Apr. 5, 2018)..................................10, 11

*Corbett v. Annucci*,
2018 U.S. Dist. LEXIS 24291 (S.D.N.Y. Feb. 13, 2018) .......................................................11

*Cunningham v. Consol. Edison, Inc.*,
2006 U.S. Dist. LEXIS 22482 (E.D.N.Y. March 28, 2006) ..................................................19

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. Sept. 19, 2019) ..................................................................................10

*Dillon v. Morano*,
497 F.3d 247 (2d Cir. 2007)..................................................................................................20

*Dwares v. City of N.Y.*,
985 F.2d 94 (2d Cir. 1993)....................................................................................................22

*Eugenio v. Walder*,
2009 U.S. Dist. LEXIS 56450 (S.D.N.Y. July 2, 2009) .......................................................16

*Fierro v. City of New York*,
2022 U.S. Dist. LEXIS 24549 (S.D.N.Y. Feb. 10, 2022) ....................................................13

*Galabya v. New York City Bd. of Educ.*,
202 F.3d 636, 640 (2d Cir. 2000)..........................................................................................20

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)..........................................................................................................13, 14

*Gillespie v. St. Regis Residence Club, N.Y. Inc.*,
343 F. Supp. 3d 332 (S.D.N.Y. 2018)...................................................................................12

*Grady v. Liberty National Bank*,
993 F.2d 132 (7th Cir. 1993) ................................................................................................20

*Green v. Brennan*,
579 U.S. 547 (2016)...............................................................................................................21

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)...............................................................................................................23

*Hollander v. Am. Cyanimid Co.*,
895 F.2d 80 (2d Cir. 1990)....................................................................................................19

*Hutter v. City of New York*,
2020 U.S. Dist. LEXIS 50060 (E.D.N.Y. Mar. 23, 2020) ...................................................16

*Leehim v. New York City Dep't of Educ.*,
2017 U.S. Dist. LEXIS 192747 (S.D.N.Y. Nov. 21, 2017) .................................................21

*Looney v. Black*,
   702 F.3d 701 (2d Cir.2012)...................................................................14

*Manessis v. New York City Department of Transportation*,
   2003 U. S. Dist. LEXIS 1921 (S.D.N.Y. Feb. 10, 2003).........................................20

*Martinez v. City of New York*,
   2008 U.S. Dist. LEXIS 49023 (S.D.N.Y. June 27, 2008)........................................22

*Milan v. Wertheimer*,
   808 F.3d 961 (2d Cir. 2015)...................................................................9

*Mitchell v. City of New York*,
   841 F.3d 72 (2d Cir. 2016)...................................................................23

*Monell v. Dep't of Social Services*,
   436 U.S. 658 (1978)....................................................................2, 22, 23

*Morey v. Somers Cent. Sch. Dist.*,
   2010 U.S. Dist. LEXIS 26262 (S.D.N.Y. March 19, 2010) .......................................16

*Owens v. Okure*,
   488 U.S. 235 (1989).........................................................................9

*Patterson v. Cty. of Oneida*,
   375 F.3d 206 (2d Cir. 2004).................................................................19

*Pearson v. Callahan*,
   555 U.S. 223 (2009)......................................................................8, 24

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004).................................................................21

*Pollock v. Shea*,
   2021 U.S. Dist. LEXIS 206741 (S.D.N.Y. Oct. 26, 2021) ......................................21

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
   180 F.3d 426 (2d Cir. 1999).................................................................19

*Robinson v. New York City Dep't of Educ.*,
   2021 U.S. Dist. LEXIS 181134 (S.D.N.Y. 2021)........................................17, 18, 20

*Ross v. Breslin*,
   693 F.3d 300 (2d Cir. 2012).................................................................14

*Ross v. N.Y.C. Dept. of Educ.*,
   935 F.Supp.2d 508 (E.D.N.Y. Mar. 22, 2013).................................................14

*Ruotolo v. City of New York,*
   2006 U.S. Dist. LEXIS 49903 (S.D.N.Y. Jul. 19, 2006) ......................................16

*Saucier v. Katz,*
   533 U.S. 194 (2001)..............................................................................................24

*Simms v. City of New York,*
   480 F. App'x 627 (2d Cir. 2012) ..........................................................................22

*Stokes v. City of Mount Vernon, N.Y.,*
   2012 U.S. Dist. LEXIS 118386 (S.D.N.Y. Aug. 14, 2012)...................................21

*Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y.,*
   593 F.3d 196 (2d Cir. 2010)............................................................................14, 15

**State Cases**

*Liu v. New York City Police Dep't,*
   216 A.D.2d 67 (1st Dep't 1995) ...........................................................................24

**Federal Statutes**

42 U.S.C. § 1983..............................................................................................................1

42 U.S.C. § 1988..............................................................................................................1

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................................2, 8

N.Y. C.P.L.R. § 214(5) ....................................................................................................9

**Constitutional Provisions**

United States Constitution First Amendment ....................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff, Michael Osgood, a retired New York City Police Department ("NYPD") Deputy Chief brings the instant action pursuant to the First Amendment of the United States Constitution via 42 U.S.C. §§ 1983 and 1988, against the City of New York ("City"), former Mayor of the City of New York Bill de Blasio; former NYPD Police Commissioner James O'Neill; former NYPD Chief of Department Terence Monahan; former Chief of Crime Control Strategies and Chief of Detectives Dermot Shea; former Legal Bureau Assistant Deputy Commissioner Ann Prunty; former NYPD Chief of Strategic Initiatives John Donohue; NYPD Chief of Detectives James Essig; and former NYPD Chief of Staff Raymond Spinella (collectively "Defendants").  Plaintiff alleges that Defendants retaliated against him following his participation in an investigation by the Office of Inspector General for the NYPD ("OIG-NYPD") into the NYPD's Special Victims Division ("SVD").  *See* ECF Dkt. No. 1 ¶¶ 1-2, 113-120.  Plaintiff, who was the former Commanding Officer of SVD between 2010 and 2018, claims to have uncovered serious and pervasive flaws impacting the SVD which he disclosed to OIG-NYPD allegedly in contravention of the direction given by NYPD's Legal Bureau, who Plaintiff alleges directed him to "obstruct, frustrate, slow down and to not fully cooperate with the OIG-NYPD investigation of SVD" by not providing certain documents or "slow-walking" their submissions, and to "shave" his testimony.  *Id.* ¶¶ 40-41, 49, 54, 58-60, 63-64, 67-68, 74. Plaintiff states that he did not comply with those alleged directives, but rather cooperated with the investigation, testified fully and truthfully, and also provided numerous documents. Thereafter, he claims that he was retaliated against in the following ways: (1) he was removed as the commander of the Hate Crimes Task Force ("HCTF") in May 2018; (2) he was shut out of an internal review of SVD and out of other meetings and briefings between April and November

2018; and (3) on November 15, 2018 he was reassigned as Executive Officer of Patrol Borough Staten Island.  *See id.* ¶¶ 94, 97, and 100.

   As set forth more fully below, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  As an initial matter, Plaintiff's claims are partially time-barred. Second, Plaintiff either fails to sufficiently allege personal involvement by several of the individual defendants, including Mayor  de Blasio, Commissioner O'Neill, Chiefs Essig, Spinella, Monahan, and Donohue, or engages in improper group pleading against these Defendants, requiring that the complaint be dismissed as against them.  Furthermore, Plaintiff fails to state a *Monell* claim against the City as he does not plausibly allege that a municipal policy or custom caused the violation of his constitutional rights.  Additionally, Plaintiff's First Amendment retaliation claim fails as his "speech" fell squarely within his official responsibilities as Commanding Officer of SVD  and therefore does not qualify as speech protected by the First Amendment.  For these reasons, and those articulated fully below, the Complaint should be dismissed.

## **STATEMENT OF  FACTS**[1]

   Plaintiff, a retired NYPD Deputy Chief, was the former Commanding Officer of SVD between 2010 and 2018.  *See* ECF Dkt. No. 1, ¶¶ 23, 100.  In November 2013, Plaintiff alleges that he was directed by former Chief of Detectives, Phil T. Pulaski, to create a PowerPoint presentation regarding staffing issues in SVD.  *See id.* ¶ 26.  In February 2014, Plaintiff met with the subsequent Chief of Detectives, Robert Boyce, to brief him on major open

---

[1] For the purposes of this motion only, the well-pleaded allegations of fact in the Complaint are deemed to be true.

SVD cases and informed Boyce of alleged serious systematic problems in SVD.  *See id.* ¶¶ 27-2. Plaintiff also provided Boyce with a copy of the PowerPoint presentation he had created.  *See id.* ¶ 29.  Plaintiff contends that "during this time" he "forced over a dozen multi-hour long senior executive meetings" where he detailed issues damaging SVD investigations, victims and placing front-line detectives in jeopardy.  *See id.* ¶ 30.  Plaintiff claims the then Chief of Crime Control Strategies Dermot Shea was present during these meetings.  *See id.* ¶ 31.

In or about January 2017, OIG-NYPD commenced an investigation into SVD's Adult Squad operation.  *See id.* ¶ 35.  Plaintiff claims the investigation was sparked by public comments made by an NYPD commanding officer who allegedly stated that acts of rape committed by a stranger are more concerning than those committed by an acquaintance of the victim.  *See id.* ¶ 34.  In March 2017, Plaintiff met with NYPD's Legal Bureau in advance of a meeting scheduled between Plaintiff and OIG-NYPD as part of their investigation into SVD. *See id.* ¶ 36.  Plaintiff claims that he brought with him to the meeting certain unspecified documents detailing the "external systemic problems that was damaging special victim's investigations, and Inspector General Reports of other cities' investigations of their respective police department's special victims' operations, and several Department of Justice consent decrees placed on other police department's special victims operations."  *Id.* ¶ 38.  Plaintiff allegedly informed defendant Ann Prunty, former NYPD Assistant Deputy Commissioner, Legal Matters, that there were serious problem with SVD.  *See id.* ¶ 39.  Plaintiff claims that over the next hour of the meeting, defendant Prunty, along with other unidentified members of the Legal Bureau, directed Plaintiff and his staff in attendance to "obstruct, frustrate, slow down and to not fully cooperate with the OIG-NYPD investigation of SVD." *Id.* ¶ 40.

Thereafter, in March 2017, Plaintiff had his first of several meetings with OIG-NYPD where several members of the NYPD Legal Bureau were in attendance. *See id.* ¶ 42-43. During the meeting, Plaintiff claims that he did not heed defendant Prunty's directives, and instead, provided complete and truthful responses to all of OIG-NYPD questions, and directed his staff to do the same. *See id.* ¶ 44. He alleged that when asked whether CompStat[2] affects SVD investigations, he responded that it did. *See id.* ¶ 45. In response, Plaintiff claims that defendant Prunty cut the meeting short and scolded him for "giving complete answers and allowing the meeting to go past and hour in time." *Id.* ¶ 46.

In May 2017, defendant Prunty forwarded OIG-NYPD's first official document request to Plaintiff and allegedly instructed Plaintiff to slow walk his response. *See id.* ¶¶ 48-49. Plaintiff claims that he disregarded this advice and instead submitted a completed response within days to the Legal Bureau. *See id.* ¶¶ 50-51. Plaintiff alleges that in August 2017, defendant Shea began excessive attacks on the SVD units at weekly CompStat meetings. *See id.* ¶ 52. He claims to have complained about this to Boyce and Assistant Chief Patrick Conry. *See id.* ¶ 53.

Plaintiff claims that when he was requested to attend a second meeting with OIG-NYPD, defendant Prunty again asked him to obstruct the investigation and "shave" his testimony and that his career would be in danger if he spoke badly about the NYPD. *See id.* ¶ 54. Plaintiff alleges that he did not comply with this directive and was thereafter scolded by defendant Prunty. *See id.* ¶ 55. A second document request from OIG-NYPD was sent to NYPD's Legal Bureau on August 21, 2017. *See id.* ¶¶ 58. Plaintiff contends that he was not informed of this request

---

[2] CompStat, or Computerized Statistics, is a method of tracking crime in an effort to reduce crime rates. https://www1.nyc.gov/site/nypd/stats/crime-statistics/crime-statistics-landing.page

until September 21, 2017, and was again asked to slow walk responses. *See id.* ¶¶ 59-60. Plaintiff, however, responded to the request within a week. *See id.* ¶ 61. Similarly, when a third document request was issued by OIG-NYPD in January 2018, Plaintiff responded within a few days despite being asked to slow walk his response. *See id.* ¶¶ 63-65. Plaintiff alleges that around this time he also began to "hear" comments made by unspecified individuals that he went "outside the family" and somehow betrayed the NYPD. *See id.* ¶¶ 62. Plaintiff contends that at this time he told defendant Monahan and Deputy Commissioner Susan Herman that the Legal Bureau was "blocking the OIG-NYPD investigation and refusing to hand over key documents." *See id.* ¶¶ 66.

Also in January 2018, Plaintiff claims he was informed by defendant Prunty that OIG-NYPD requested to interview him again, but she told them he was too busy. *See id.* ¶¶ 67. In February 2018, an "Executive Order 16" was issued to Plaintiff compelling his appearance at an interview with OIG-NYPD. *See id.* ¶¶ 68. Plaintiff contends that he was ordered to attend another pre-OIG-NYPD interview meeting with the Legal Bureau, where defendant Prunty entered the room in an aggressive manner holding several SVD internal communications Plaintiff had provided to the Legal Bureau. *See id.* ¶¶ 69-71. Plaintiff contends that defendant Prunty attempted to dissuade him from giving a full disclosure to OIG-NYPD, but he responded that he would not participate in any obstruction of the investigation. *See id.* ¶¶ 72-73.

During his third meeting with NYPD-OIG, Plaintiff contends that the NYPD Legal Bureau was not permitted to attend. *See id.* ¶¶ 73-74. Plaintiff claims that during the interview he was shown 14 internal communications he delivered to the NYPD Legal Bureau. Plaintiff was then asked how many communications he provided to the NYPD Legal Bureau, to which he responded, 32. *See id.* ¶¶ 76-78. Plaintiff claims he was asked why more documents

had not been provided to OIG-NYPD, to which he responded that they should ask the Legal Bureau.  *See id.* ¶ 79.  Plaintiff claims that he was also asked if the NYPD ever responded to any of the previously unmentioned memos he wrote, and he answered no. *See id.* ¶ 80.

In mid-March 2018, OIG-NYPD issued a report concerning SVD that was critical of the NYPD.  *See id.* ¶ 81.  Plaintiff claims that after this report was issued he "began hearing" comments from unspecified individuals such as: "Osgood betrayed the NYPD, Osgood went outside the family, Osgood will be transferred, Osgood will be replaced by a female, Osgood will be disciplined, Osgood will get charges and specs, they will rip the SVD and [HCTF] . . . away from Osgood to demoralize him, Osgood is going to be f#$%!d ..." *Id.* ¶¶ 82.  The New York City Council held hearings concerning the report on April 9, 2018.  *See id.* ¶ 83.   Plaintiff alleges that in preparation for that hearing, over a dozen preparation meetings were held.  *See id.* ¶ 84.  Defendant Donohue, the former Chief of Strategic Initiatives and defendant Spinella, the former Chief of Staff, were present during one prep meeting.   Plaintiff contends that during that meeting defendant Donohue said to him, "Mike fucking Osgood!" *Id.*   Plaintiff alleges he responded, "I didn't cause this," and in response defendant Donohue said "Your fucking memos, you didn't have to give them your memos." *Id.*   In April 2018, Boyce was replaced by defendant Shea as Chief of Detectives.  Plaintiff alleges that prior to his replacement, Boyce told him that he would have to "fight" former Police Commissioner O'Neill and City Hall for his job.  *Id.* at ¶ 87.

Following the City Council hearings, Plaintiff claims that the retaliation against him escalated.  *See id.* ¶ 88.  Plaintiff states, without support, and "upon information and belief," that defendants O'Neill, Monahan, Shea and Essig "conspired" to undermine Plaintiff's reputation by engaging in "excessive attacks on SVD in CompStat" and having "rogue SVD

supervisors" gather false information about Plaintiff.  *Id.* at ¶ 89.  Plaintiff further claims that Shea embarked on a review of SVD "to drum up negative stats" to denigrate Plaintiff.  *Id.* at ¶ 90.  Plaintiff vaguely contends without explanation that defendant Monahan "made it known that he wanted" Plaintiff.  *Id.* at ¶ 91.

In May 2018, Plaintiff alleges that defendant Essig asked him if Plaintiff lived on Staten Island.  *See id.* ¶ 92.  In the same month, Plaintiff alleges that OIG-NYPD initiated a second investigation into SVD "to acquire information [on whether] NYPD Senior Executives had obstructed the OIG-NYPD from obtaining during the first investigation, and to initiate and investigation on the Division's Child Squads and Registered Sex Offender Unit."  *Id.* ¶ 93. Plaintiff alleges that on unspecified dates he provided "several hundred pages of documents to . . . OIG-NYPD and gave full disclosure on all aspects in the examined areas."  *Id.*  Plaintiff contends that also in May 2018, he was removed from the HCTF which had been under his command for over 16 years.  *See id.* ¶ 94.  Between April and November 2018, Plaintiff alleges that defendant Shea shut him out of an internal review of SVD, as well as meetings and press briefings, and further contends that defendant Monahan undertook efforts "to block a favorable news article that was being written about" Plaintiff.  *Id.* ¶ 97.

Plaintiff alleges, "upon information and belief," that in October 2018, a meeting was held between defendants O'Neill, Donohue, Shea and Spinella regarding transferring Plaintiff out of SVD.  *See id.* ¶ 98.  Plaintiff contends that on November 15, 2018, he received a text message from defendant Essig stating that defendant Shea wanted to see him at 3:45 p.m. *See id.* ¶ 99.  Plaintiff met with defendant Shea on that day and was informed that he was being transferred to Patrol Borough Staten Island to be the Executive Officer of that command, which he characterizes as a demotion.  *See id.* ¶ 100.  Plaintiff then went on terminal leave commencing

November 23, 2018, using his paid leave prior to retirement. *See id.* ¶ 104.  Plaintiff claims that on July 30, 2020, while he was still on terminal leave, he was asked to participate in an NYPD Internal Affairs Bureau investigation regarding his allegedly speaking to the press without authorization. *See id.* ¶ 105.   Plaintiff chose to retire effective August 11, 2020.  *See id.* ¶ 106. Plaintiff characterizes his voluntary retirement as a constructive discharge and contends to have forfeited nineteen months and twenty days of paid leave. *See id.* ¶ 106.

## ARGUMENT

### A.    Standard on a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court explained the plausibility standard by stating that, where a complaint pleads facts that are merely consistent with a defendant's liability "without some further factual enhancement[,] it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 697, *quoting Twombly*, 550 U.S. at 557).  That is, the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level," and a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Iqbal*, 555 U.S. at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id., quoting Twombly*, 550 U.S. at 557.  Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*  "Unless a plaintiff's well-pleaded allegations of fact have 'nudged [his] claims across the line from

conceivable to plausible, [the plaintiff's] complaint must be dismissed.'"   In applying this standard, the Court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements for a cause of action." *Iqbal*, 556 U.S. at 662, *citing Twombly*, 550 U.S. at 555).   Although the Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

**POINT I**

**PLAINTIFF'S   CLAIMS   ARE   PARTIALLY TIME-BARRED**

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Condit v. Bedford Cent. Sch. Dist.*, No. 16 CV 6566 (CS), 2017 U.S. Dist. LEXIS 171701, *19 (S.D.N.Y. Oct. 16, 2017), citing *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017) (internal quotation marks omitted) and *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). New York provides a three-year statute of limitations for personal injury claims (*see* N.Y. C.P.L.R. § 214(5)), and thus, the statute of limitations for a § 1983 claim in this District is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989).

Plaintiff commenced this action on November 15, 2021.  *See* ECF Dkt. No. 1. Accordingly, any claims that accrued prior to November 15, 2018 are time-barred and must be dismissed.  *See Condit*, 2017 U.S. Dist. LEXIS 171701 at *19-22 (dismissing the plaintiff's First Amendment retaliation claim as time-barred).   Thus, Plaintiff's claim that he was retaliated

against by being removed as commander of HCTF in May 2018 and excluded from meeting and briefings between April and November 2018, are time barred.

Further, Plaintiff's time barred claims are not salvaged by the continuing violations doctrine. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" *Birch v. City of N.Y.*, 675 F. App'x 43, 44 (2d Cir. 2017), *quoting National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111-112 (2002); *see Bright v. Coca Cola Refreshments USA, Inc.,* No. 12 CV 234 (BMC), 2014 U.S. Dist. LEXIS 155565, *9 (E.D.N.Y. Nov. 3, 2014). Plaintiff's claim regarding his removal as the commanding officer of the HCTF and exclusion from meetings and briefings all occurred at distinct points in time and thus are discrete acts that do not constitute continuing violations. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 429 (2d Cir. Sept. 19, 2019) (holding that the plaintiff allegations of being excluded from workplace meetings is a discrete act that is insufficient to establish a continuing violation), *citing Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Thus, Plaintiff's First Amendment retaliation claims based on those alleged acts are time-barred.

## POINT II

**PLAINTIFF'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST DEFENDANTS DE BLASIO, COMMISSIONER O'NEILL, AND CHIEFS ESSIG, SPINELLA, MONAHAN, AND DONOHUE, FOR LACK OF PERSONAL INVOLVEMENT**

"A central component of a § 1983 claim is Defendant's personal involvement in the alleged constitutional violation." *Constant v. Annucci*, No. 16 CV 3985 (NSR), 2018 U.S. Dist. LEXIS 58318, *8-10 (S.D.N.Y. Apr. 5, 2018), citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual

liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation"). Where a plaintiff "seek[s] to impose individual liability upon a government officer for actions taken under color of state law," such an individual may not be held liable for damages for constitutional violations simply because he or she held a high position of authority. *Corbett v. Annucci*, No. 16 CV 4492 (NSR), 2018 U.S. Dist. LEXIS 24291, at *13 (S.D.N.Y. Feb. 13, 2018), citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Constant*, 2018 U.S. Dist. LEXIS 58318, *9. The personal involvement of a supervisory defendant, as relevant here, may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, [or] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts . . .

*Id.*, citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff makes no such showing with respect to former Mayor de Blasio. The only allegation related to defendant DeBlasio in Plaintiff's Complaint is reference to former Mayor de Blasio terminating the Commissioner of the New York City Department of Investigation, Mark Peters, who was the overall head of OIG-NYPD. *See* ECF Dkt. No. 1 ¶ 102. This lone allegation hardly supports personal involvement for §1983 purposes. Plaintiff advances no allegation that former Mayor de Blasio participated in any of the acts he alleges are retaliatory, or that he was ever made aware of the acts Plaintiff claims were retaliatory. As such,

Plaintiff has failed to establish the personal involvement of former Mayor de Blasio sufficient to support a § 1983 claim, requiring that he be dismissed as an individual defendant.

Similarly, the crux of Plaintiff's allegations against Commissioner O'Neill, and Chiefs Essig, Spinella, Monahan, and Donohue, make reference to a clandestine conspiracy to retaliate against Plaintiff, including by demoting him, and are made entirely "upon information and belief". *See* ECF Dkt. No. 1 ¶ 89 ("*Based on information and belief*, defendant Commissioner O'NEILL ordered and then conspired with, without limitation, defendant Chief MONAHAN, defendant Chief of Detectives SHEA, and defendant Assistant Chief JAMES ESSIG, to undermine Mr. Osgood's reputation…") (emphasis added); ECF Dkt. No. 1 ¶ 98 ("In October 2018, *upon information and belief*, a meeting was held and attended by defendants O'NEILL, DONAHUE, SHEA, and SPINELLA regarding SVD and the retaliatory and otherwise groundless transfer of Mr. Osgood out of command.") (emphasis added). These allegations, however, "fail to state a claim [because] plaintiff does not support them with a statement of facts that create a plausible inference of their truth." *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *accord Colon v. City of N.Y.*, No. 19 CV 10435 (PGG) (SLC), 2021 U.S. Dist. LEXIS 8931, at *60-61 (S.D.N.Y. Jan. 15, 2021) (citing cases).[3]  These allegations also consist of nothing more than improper group pleading, which is insufficient to state a claim. *See Gillespie v. St. Regis Residence Club, N.Y. Inc.*, 343 F. Supp. 3d 332, 352 (S.D.N.Y. 2018) ("Complaints that rely on group pleading fail to differentiate as to which defendant was involved

---

[3] Plaintiff also claims that: in May 2018 Essig asked him if he lived in Staten Island (*see* ECF Dkt. No. 1 ¶ 92); Monahan made it known he "wanted" Plaintiff (*id.* ¶ 91);  and Donohue stated "Your fucking memos, you didn't have to give them your memos" (*id.* ¶ 84). These allegations, however, do not articulate a plausible claim that these individuals deprived Plaintiff of his rights under the First Amendment, and are insufficient to state a claim against them.

in the alleged unlawful conduct are insufficient to state a claim.") (internal quotations omitted).

For the foregoing reasons, all claims against defendants de Blasio, O'Neill, Essig, Spinella,

Monahan, and Donohue, must be dismissed, as Plaintiff has failed to plausibly plead that they

participated in any alleged constitutional deprivations.

**POINT III**

**PLAINTIFF'S       FIRST       AMENDMENT
RETALIATION CLAIMS FAILS**

**A.      Plaintiff Fails to State a Claim of First Amendment Retaliation**

Plaintiff's First Amendment retaliation claim hinges on his allegations that he was

removed as the commanding officer of the HCTF, excluded from meetings and briefings,

transferred and ultimately constructively terminated for: (1) raising issues regarding the

operation of SVD to internal NYPD executives, and (2) cooperating with the OIG-NYPD

investigation into SVD.  Plaintiff's claim fails because he does not adequately plead a cause of

action for First Amendment retaliation that he, as a public employee, spoke as citizen.

A  plaintiff  asserting  a First Amendment retaliation claim  must plausibly  allege

that: "(1) [the] speech or conduct was protected by the First Amendment; (2) the defendant took

an adverse action against him; and (3) there was a causal connection between this adverse action

and the protected speech." *Fierro v. City of New York*, No. 20 CV 9966 (GHW), 2022 U.S. Dist.

LEXIS 24549, *13 (S.D.N.Y. Feb. 10, 2022), citing *Matthews v. City of New York*, 779 F.3d 167,

172 (2d Cir. 2015).  A public employee's speech is only protected to the extent that the employee

is speaking as citizen on matters of public concern.  *See Garcetti v. Ceballos*, 547 U.S. 410, 421

(2006).  Thus, "public employees cannot state a claim for First Amendment retaliation unless

(among other requirements) they speak as citizens on matters of public importance." *Fierro*,

2022 U.S. Dist. LEXIS 24549, at *13, quoting *Castine v. Zurlo*, 756 F.3d 171, 177 n.5 (2d Cir.

- 13 -

2014).  In other words, unless the employee speaks as a citizen, the speech at issue is unprotected "even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012).

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . ." *Garcetti*, 547 U.S. at 421. "This is the case even when the subject of an employee's speech is a matter of public concern." *Looney v. Black*, 702 F.3d 701, 710 (2d Cir.2012) (quoting Ross, 693 F.3d at 305).  A public employee's speech can be said to have been made "pursuant to . . . official duties" where "the speech . . . owes its existence to a public employee's professional responsibilities, **or where the speech is part-and-parcel of [the employee's] concerns about [the employee's] ability to properly execute [employment] duties.**" *Weintraub v. Bd. of Educ. of City Sch. Distr. of City of. N.Y.*, 593 F.3d 196, 203 (2d Cir. 2010) (emphasis added) (internal quotations omitted).  Thus, "if the public employee's speech 'owes its existence to [the employee's] professional responsibilities,' it is not protected" speech.  *Ross v. N.Y.C. Dept. of Educ.*, 935 F.Supp.2d 508, 516 (E.D.N.Y. Mar. 22, 2013), quoting *Garcetti*, 547 U.S. at 421-22.

Here, Plaintiff's speech is not protected under the First Amendment because the alleged speech owes its experience to Plaintiff's professional responsibilities, and his "concerns about his ability to properly execute his duties." *See Weintraub, supra*.   Plaintiff became the commanding officer of SVD in 2008.  *See* ECF Dkt. No. 1, ¶ 23.  Plaintiff states that within his role as commanding officer of SVD, he "implemented ten new organizational units within SVD, designed and implemented the Investigative Process Improvement Group (IPIG) to improve detective work" and further "created a Division Operational Mental Model to drive investigative and operational decisions."  *Id.* ¶ 25.  Plaintiff specifically alleges that in 2013, he was directed

by the former Chief of Detectives, Phil T. Pulaski, "to construct a PowerPoint presentation on the problems facing the SVD with a focus on staffing." *Id.* ¶ 26. Plaintiff then spent eight weeks constructing a PowerPoint in response to that request. *See id.* Plaintiff does not contend in any way that such a requests was outside of his job duties or a task that he was not required to do. Rather, the allegations clearly indicate that as the commanding officer of SVD, it was within his purview to report on issues facing SVD. In fact, in February 2014 Plaintiff, on his own volition, provided the subsequent Chief of Detectives, Robert Boyce, with a copy of the PowerPoint (*see id.* ¶ 29). Moreover, Plaintiff contends that he "forced over a dozen multi-hour long senior executive meetings" to specifically discuss issues within SVD regarding investigations, victims and actions that place front-line detectives in jeopardy—things that plainly affected his "ability to properly execute his duties." *See Weintraub, supra;* ECF Dkt. No. 1, ¶ 31. Plaintiff states that he "was an ongoing vocal advocate for increasing staffing numbers, improving training, and fighting for a dedicated squad of experienced investigators to be made available to SVD to adequately deliver effective investigative services to victims of sexual violence." *Id.* ¶ 32. These acts clearly indicate that raising issues regarding the operation of SVD was within the scope of Plaintiff's employment as the commanding officer of SVD—Plaintiff was, by his own admission, acting as SVD Commander and seeking to improve its operations.

In 2017, when OIG-NYPD launched its investigation into SVD, Plaintiff was asked by NYPD employees within its Legal Bureau to attend a meeting regarding the OIG-NYPD investigation. *See id.* ¶ 36. In fact, Plaintiff stated that he was "directed to attend" the first meeting with the NYPD Legal Bureau. *See id.* It is clear, therefore, that Plaintiff's participation in the OIG-NYPD investigation was as part of his employment with NYPD as commanding officer of SVD. Given OIG-NYPD's investigation into SVD, it is axiomatic that

the investigators would want to speak with the individual in command of SVD.   Plaintiff's Complaint does not indicate in any way that he sought out participation in the OIG-NYPD investigation on his own volition.   Plaintiff continued to meet with the Legal Bureau on multiple occasions between March 2017 and February 2018 to discuss OIG-NYPD document requests and in preparation for three interviews with OIG-NYPD.   *See id.* ¶¶ 36-74.   Plaintiff contends that his disclosures during those interviews with OIG-NYPD constitutes the "speech" for which he was retaliated against.   However, Plaintiff's "speech" indisputably owes its existence to his position within NYPD and concerns his own employment and therefore he was not speaking as a citizen.  *See Hutter v. City of New York*, No. 18 CV 6421 (NGG) (SJB), 2020 U.S. Dist. LEXIS 50060, *6-8 (E.D.N.Y. Mar. 23, 2020) (dismissing NYPD police officer's First Amendment retaliation claim where he contends false allegations were lodged against him following his complaints regarding the operation of a unit to which he was assigned, because the plaintiff spoke pursuant to his official duties as an NYPD Lieutenant); *Morey v. Somers Cent. Sch. Dist.*, No. 06 CV 1877 (PGG), 2010 U.S. Dist. LEXIS 26262, at *19 (S.D.N.Y. March 19, 2010) (dismissing case where head custodian expressed concerns about asbestos contamination because they were "made in furtherance of his core duties as head custodian at that school."); *Eugenio v. Walder*, No. 06 CV 4928 (CS) (GAY), 2009 U.S. Dist. LEXIS 56450, at *23 (S.D.N.Y. July 2, 2009) ("Plaintiffs' reports of suspected abuse to CPS are not constitutionally protected speech because Plaintiffs made those reports pursuant to their official duties and not as private citizens"); *Ruotolo v. City of New York*, No. 03 CV 5045 (SHS), 2006 U.S. Dist. LEXIS 49903, *9-16 (S.D.N.Y. Jul. 19, 2006) (dismissing claims of First Amendment retaliation advanced by a retired NYPD sergeant who alleged he subjected him to acts of retaliation after he gave his commanding officer a memorandum outlining possible environmental risks at his police precinct

because his speech was part and parcel of his official duties as his precinct's Command Safety Officer).

        While Plaintiff's third and final interview with OIG-NYPD was subject to "Executive Order 16, compelling his appearance as a witness" (ECF Dkt. No. 1, ¶ 69), his "speech" during that interview is still not protected by the First Amendment as it was made in furtherance of his employment duties.  Such a circumstance is similar to that faced by this Court in *Robinson v. New York City Dep't of Educ.*, No. 20 CV 8175 (VSB), 2021 U.S. Dist. LEXIS 181134, *18 (S.D.N.Y. 2021).  There the Court granted the defendant's motion to dismiss a complaint where the plaintiff alleged First Amendment retaliation claiming she was terminated for having reported several violations of state law to her immediate supervisor and the Special Commissioner of Investigation for the New York City School District.  Plaintiff in *Robinson* was the Executive Director of New York City Department of Education's Office of Pupil Transportation ("OPT").  The plaintiff reported violations related to bus driver certifications and training certificates, including an allegation that one private company was selling invalid bus driver certificates.  As relevant here, following the reporting of those alleged violations, the FBI and the New York State Attorney General's Office ("NYAG") issued subpoenas for information the plaintiff had related to bus contracts.  Plaintiff argued that her "speech" to those entities are protected under the First Amendment because the subpoenas are outside the scope of her ordinary job duties.  *See id.*  The Court held that while that may be true "Plaintiff was only speaking to the FBI and NYAG **based on her specialized knowledge of DOE and OPT matters.**"  *Id.* (emphasis added).  The Court stated further that "Plaintiff does not address the core problems for her First Amendment retaliation claim: (1) that her speech was central to her employment responsibilities to oversee training and certification for public school bus drivers,

and (2) that she knew about the issues in question because of the specialized knowledge she gained through her employment position." *Id.* As such, the Court concluded that "Plaintiff was in no way speaking as an ordinary citizen; therefore, she cannot satisfy the first element" of a First Amendment retaliation claim. *Id.*

Plaintiff's speech here lacks First Amendment protection for the same reasons as in *Robinson*. Plaintiff's statements made to OIG-NYPD included information that was gained *exclusively* through his employment with NYPD. Plaintiff's speech to OIG-NYPD was central to his employment responsibilities as commanding officer of SVD, which, by Plaintiff's own admissions, required him to oversee the Division, suggest improvements and report on issues within the Division. *See* ECF Dkt. No. 1, ¶¶ 25-32. Moreover, Plaintiff was keenly aware of issues facing SVD that were the subject of the OIG-NYPD investigation due to the specialized knowledge he gained from his duties as commanding officer of SVD. Thus, any interview Plaintiff was compelled to attend via Executive Order 16, while not a general part of his job duties, occurred only because Plaintiff was speaking due to his aforementioned specialized knowledge of SVD via his employment with NYPD. Thus, this Court should reach the same conclusion here as in *Robinson* that Plaintiff was in no way speaking as an ordinary citizen.

Moreover, even if Plaintiff's speech is constitutionally protected – which it is not – Plaintiff has not adequately alleged an inference of causation between his purported speech and the alleged adverse employment actions. Absent any direct evidence of retaliation to establish the causation prong of a prima facie case, Plaintiff must be able to show that the retaliatory actions closely followed the protected activity or that there was a reasonably close "temporal proximity" between the two. *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). Plaintiff alleged "speech" includes reporting issues regarding SVD internally in 2014 and

speaking to OIG-NYPD between March 2017 and February 2018.  Plaintiff's alleged speech has no causal connection with his (1) May 2018 removal from the HCTF; (2) exclusion from an internal review of SVD, as well as meetings and briefings between April and November 2018; (3) November 2018 transfer to Patrol Borough Staten Island; and (4) alleged constructive termination in August 2020.  *See* ECF Dkt. No. 1, ¶¶ 94, 97, 100, 106.  Notably, as discussed *supra*, Point I, Plaintiff's claim related to his removal from HCTF is time-barred.  *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (The statute of limitations applicable to claims brought under § 1983 in New York is three years).

While the Second Circuit has not drawn a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Abrams*, 764 F.3d at 254, the almost four years between Plaintiff's 2014 internal complaints and any of the alleged adverse employment actions he identifies, is far too long to establish the requisite causal connection. *See e.g. Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir. 1999) (finding that a two-year gap between the protected activity and alleged retaliatory act was too long to support an inference of retaliatory animus).  Similarly, the time frame between Plaintiff's contact with OIG-NYPD commencing in March 2017 and the alleged adverse employment actions, all occurring after May 2018 are also too far attenuated to be causally connected.  *See Hollander v. Am. Cyanimid Co.*, 895 F.2d 80, 84-86 (2d Cir. 1990) (finding no causal nexus when three-and-a-half months passed between the discrimination complaint and the alleged retaliatory act); *Cunningham v. Consol. Edison, Inc.*, No. 03 CV 3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. March 28, 2006) (collecting cases and identifying two months as the dividing line of temporal proximity).  While Plaintiff continued to meet with OIG-NYPD through February

2018, he had already been speaking out about his concerns about the operation of SVD with OIG-NYPD since March 2017.  Notably, temporal proximity is measured from an employer's knowledge of protected activity and an adverse employment action.  *See Robinson*, 2021 U.S. Dist. LEXIS 181134, *20 (S.D.N.Y. Sept. 22, 2021).   Here, Defendants became aware of Plaintiff speaking with OIG-NYPD in March 2017.   Nevertheless, the approximately nine months between Plaintiff's February 2018 meeting with OIG-NYPD and his November 2018 transfer to Patrol Borough Staten Island is too far attenuated to establish a causal connection. Thus, causal connection between any protected activity and adverse employment action is lacking.

Moreover, Plaintiff's alleged exclusion from meetings are not adverse employment actions.  To establish an adverse employment action, a plaintiff must show a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). To be "'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*, *quoting Grady v. Liberty National Bank*, 993 F.2d 132, 136 (7th Cir. 1993)); *Manessis v. New York City Department of Transportation*, No. 02 CV 359 (SAS), 2003 U. S. Dist. LEXIS 1921 (S.D.N.Y. Feb. 10, 2003) ("not everything that makes an employee unhappy is an actionable adverse action").  The exclusion from meetings and briefings is not an adverse employment action. *See Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (affirming that the exclusion from certain staff meetings were not adverse employment actions).

With respect to constructive discharge, Plaintiff's claim lacks merit.  "Courts evaluating First   Amendment retaliation   claims   for constructive   discharge regularly   rely

on constructive discharge analyses in employment discrimination case law." *See e.g. Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628, 632 (2d Cir. 2012), *cert. denied*, 568 U.S. 1085 (2013); *Stokes v. City of Mount Vernon, N.Y.*, No. 11 CV 7675, 2012 U.S. Dist. LEXIS 118386, at *19-20 (S.D.N.Y. Aug. 14, 2012), *reconsideration granted in part on other grounds*, 2012 U.S. Dist. LEXIS 183724 (S.D.N.Y. Dec. 17, 2012).   Thus, "an employee is constructively discharged when his [or her] employer . . . intentionally creates a work atmosphere so intolerable that he [or she] is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004).  The Supreme Court has explained that a constructive discharge claim consists of "two basic elements."  *Green v. Brennan*, 579 U.S. 547, 555 (2016).  First, a plaintiff must prove "that he [or she] was discriminated against by his [or her] employer to the point where a reasonable person in his [or her] position would have felt compelled to resign."  *Id.*  Second, the plaintiff "must [] show that he [or she] actually resigned."  *Id.*  "A constructive discharge may not be established solely through evidence that the employee was dissatisfied with [his or] her assignments or felt that [his or] her work was unfairly criticized.  Instead, the employee must show that [his or] her employer acted <u>deliberately</u> to make working conditions intolerable." *Leehim v. New York City Dep't of Educ.*, No. 17 CV 3838 (PAE), 2017 U.S. Dist. LEXIS 192747, *12-13 (S.D.N.Y. Nov. 21, 2017) (internal quotation marks omitted) (emphasis added), citing *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007).  Here, Plaintiff was transferred to Patrol Borough Staten Island on November 15, 2018.  Eight days later, Plaintiff went on terminal leave.  Plaintiff's Complaint does not identify any act within those eight days that was so deliberately intolerable that he was compelled go on leave.  Rather, at most, Plaintiff's Complaint indicates that he was dissatisfied with his transfer, which is insufficient to support a claim of constructive discharge.  *See Leehim*, 2017 U.S. Dist. LEXIS

192747 at *12-13.   Moreover, Plaintiff's Complaint does not contend that his rank, salary, or benefits were altered in any way following his transfer.  *See Pollock v. Shea*, No. 20 CV 6273 (JGK), 2021 U.S. Dist. LEXIS 206741, *26-27 (S.D.N.Y. Oct. 26, 2021) (dismissing the plaintiff's constructive discharge claim where the plaintiff resigned following a transfer wherein she retained her three-star rank and salary.).   Thus, Plaintiff fails to plausibly plead constructive discharge.

In sum, Plaintiff's Complaint fails to plausibly plead a claim of First Amendment Retaliation as his allegations do not demonstrate that he was speaking as a citizen, because his speech owes its existence to his professional responsibilities as a public employee.   Further, even if Plaintiff's speech could be considered constitutionally protected, Plaintiff fails to plausibly plead causation, and his constructive termination claim fails.   As such, Plaintiff's Complaint should be dismissed.

**B.     Plaintiff Fails To Plausibly Plead A § 1983 Claim For Municipal Liability Under The Free Speech Clause of The First Amendment**

In order to maintain a § 1983 action against a municipality or an individual sued in his official capacity, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Bermudez v. City of New York*, No. 10 CV 1162 (CM), 783 F. Supp. 2d 560, 575 (S.D.N.Y. Mar. 25, 2011). To state a claim for municipal liability pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional rights." *Simms v. City of New York*, 480 F. App'x 627, 629 (2d Cir. 2012) (citation and internal quotation marks omitted).   In this case, for the reasons articulated above, plaintiff has failed to show that her First Amendment rights were violated and, therefore, the derivative *Monell* claim should be dismissed. *See City of Los Angeles v. Heller*,

475 U.S. 796, 799 (1986) (if plaintiff cannot show that her constitutional rights were violated by a City actor, then there cannot be *Monell* liability); *Martinez v. City of New York*, No. 06 CV 5671 (WHP), 2008 U.S. Dist. LEXIS 49023, at *12 (S.D.N.Y. June 27, 2008) ("[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), *aff'd sub nom, Martinez v. Muentes*, 340 F. App'x 700 (2d Cir. 2009).

        Here, Plaintiff's claim fails to meet the initial requisite element because he has not plausibly pled a "policy, custom, or practice" that was causally connected to his injuries. *See Monell*, 436 U.S. 658.  Plaintiff's Complaint is entirely devoid of any factual allegations to support his §1983 claim. Even if Plaintiff had alleged such a violation, he does not plausibly allege that a municipal policy or custom caused the violation of his constitutional rights.  The "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds* by *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  Here, Plaintiff has alleged neither a policy nor a practice.  Plaintiff does nothing more than contend in a conclusory fashion the existence of a policy and alleged actions by policymakers.  *See* ECF Dkt. No. 1, ¶ 115.  Rather, the pleadings only allege a single incident of allegedly unconstitutional activity— that Plaintiff allegedly retaliated against for participating in the OIG-NYPD investigation into SVD. While Plaintiff's Complaint states that several of his subordinates participated in the investigation, he does not allege that they experienced any alleged retaliation, clearly contradicting his claim that some policy or general practice exists that is relevant to his claims.  Even assuming the veracity of that allegation for purposes of a motion to dismiss, Plaintiff has failed to specifically identify any policy that resulted in the alleged retaliation,

which is insufficient to impose liability under *Monell*. *See Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (holding that a single incident of unconstitutional activity is insufficient to alleged a *Monell* violation)). Plaintiff's failure to plead the existence of an "official, policy, or custom" is fatal to his claim, requiring dismissal.

POINT IV

## THE INDIVIDUAL DEFENDANTS ARE QUALIFIEDLY IMMUNE FROM SUIT

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A violated right is "clearly established" if "it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (internal quotation marks omitted).

In the instant case, all of the individual defendants are entitled to qualified immunity under Section 1983. As shown above, the actions of Defendants did not violate any constitutional right and cannot give rise to any liability. *See Liu v. New York City Police Dep't*, 216 A.D.2d 67, 68 (1st Dep't 1995)("A government official performing a discretionary function is entitled to qualified immunity providing his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Thus,

qualified immunity shields the individual defendants and all constitutional claims must be dismissed as against them.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the complaint in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           March 14, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street, Room 2-186
New York, New York 10007
(212) 356-2444
dosaint@law.nyc.gov

By:      */s Dominique F. Saint-Fort*
         Dominique F. Saint-Fort
         Assistant Corporation Counsel